June Term,
1862.

JESUP
v.
CITY BANK OF
RACINE et al.

15  604
99  105

JESUP *vs.* THE CITY BANK OF RACINE and others, impleaded &c.

An order setting aside a sale upon a judgment of foreclosure, is appealable.

Where a sale is allowed to take place upon a judgment, without any steps taken to stay proceedings, the title of a stranger who purchases and advances his money, will not be divested by a subsequent reversal of the judgment.

Where no steps are taken to stay proceedings under a judgment of foreclosure, and the plaintiff purchases the property at the sale, and the judgment is afterwards reversed on an appeal, on grounds which do not defeat the entire claim of the plaintiff, but only reduce the amount of his recovery, the sale should not be set aside unless it be shown that there was some unfairness in the sale, or that the property would bring a larger amount on a re-sale.— *Otherwise* if the reversal shows that the plaintiff had *no* claim under the mortgage, and therefore no right to have the property sold at all.

APPEAL from the Circuit Court for *Racine* County.

This was an action to foreclose a mortgage given by the Racine & Mississippi Railroad Company to *Jesup* and Raymond to secure certain bonds. The *City Bank of Racine and others* were made defendants as judgment creditors of the railroad company subsequent to the mortgage. On the 17th of July, 1860, judgment of foreclosure and sale was rendered for $870,644.35, being the whole amount of the bonds so secured, with interest. On the 9th of November, 1860, (proceedings not having been stayed), the mortgaged premises were sold under the judgment to the plaintiff *Jesup* for $210,000. In January, 1861, the sale was confirmed. In March, 1861, the *City Bank of Racine* and other judgment creditors appealed from the judgment of foreclosure and sale to the supreme court, and on the 2d of November, 1861, that court reversed the judgment upon grounds which did not defeat the entire claim of the plaintiffs under the mortgage, but for error in the determination of the court below as to the amount due thereon at the time of the judgment. See 14 Wis., 331. In January, 1862, the *City Bank of Racine* and other defendants, judgment creditors of the company, moved the circuit court to set aside the sale and the order confirming it, for the following reasons: "1. The judgment rendered by this court in this action has been reversed, and the action remanded for a new trial. 2. If the

plaintiff succeed on the new trial, judgment of foreclosure and sale must be rendered, and a sale under such judgment would be inconsistent with the sale and conveyance under the judgment reversed. 3. It is the duty of the court to correct its own orders and judgments, so that no conflict of title shall arise by reason of different conveyances made under the judgment of the court in the same action. 4. The sale was irregular because the sheriff sold personal and real property together, and in one parcel. None of the personal property sold was present at such sale. 5. The plaintiffs are trustees. The property was bid off by one of the plaintiffs as an individual, disregarding the trust. The purchaser paid nothing for the property. No money was paid to the sheriff, or to the plaintiffs or their attorneys, by the purchaser. As a matter of form, receipts were given to the sheriff for the amount of the bid by the attorney for the plaintiff. 6. The sale was prejudicial to the defendants, the judgment creditors." The motion was founded upon the records and papers on file in the action in the circuit court, and the proceedings had, and orders and judgments entered therein in the supreme court, and upon the affidavit of the under-sheriff who sold the property upon the decree of foreclosure. This affidavit stated that the affiant, as such under-sheriff, sold the mortgaged property on the 9th of November, 1860, to *Mr. Jesup*, one of the plaintiffs, at public auction, for $210,000 ; that on such sale no money was paid to him except some $17, the fee for making such sale ; that so far as he knew, no money was paid to the attorney of the plaintiffs, nor to the plaintiffs, or either of them, for the amount bid by said *Jesup* ; that J. W. Carey, the attorney for the plaintiffs, gave to him a receipt for the amount of said bid ; that no part or article of the mortgaged property sold was present or exhibited to the bidders at the sale ; and that such property was sold in one parcel. In opposition to the motion, the affidavit of Mr. Carey was read, stating that *Mr. Jesup* purchased the mortgaged property at the sale at the request and for the benefit of all the bondholders, and in pursuance of a written authority given him by them for that purpose; that on said purchase all costs and ex-

June Term,
1862.

JESUP
v.
CITY BANK OF
RACINE et al.

penses of the foreclosure and sale were paid to the affiant by the purchaser, and that the balance of the bid was to be applied *pro rata* in payment of the several bonds included in the judgment.—The circuit court sustained the motion, and adjudged " that the order confirming the sale of the mortgaged premises in this action, and the confirmation of said sale, and also the sale of said mortgaged premises, be vacated and set aside." *Jesup* excepted to the order vacating said sale and the order confirming the sale, and appealed.

*Carey & Pratt,* for appellant :

The respondents were proper but not necessary parties to the action; and the reversal as to them does not affect the others. The mortgaged premises were regularly sold, and it is not pretended that they were not sold for their full value, or that more could be realized by a re-sale. There was, therefore, no reason for setting the sale aside. *Tate vs. Liggat,* 2 Leigh, 84; 1 Barb. Ch. Pr., 395; 3 Daniell's Ch. Pr., 1660, Note 1604. If the mortgage debt, prior to the claim of the respondents, is not equal to the amount realized on the sale, they can reach the surplus and have it applied to their judgments, if theirs is the next lien. Hence no right of theirs was infringed by the sale. 2. At common law a sale under a judgment or decree is not affected by a subsequent reversal of such judgment or decree. The New York authorities, indeed, appear to hold that when the purchaser is a party to the record, the sale is vacated on reversal; but such is not the doctrine in the courts of any other state or in those of the United States. *Whiting vs. U. S. Bank,* 13 Peters, 6; *Gossom vs. Donaldson,* 18 B. Monroe, 230, 237; 8 id., 104; 12 id., 471; 5 Monroe, 451, 455 ; 2 Ala., 325; 5 Blackf., 328; 6 id., 466; 1 Browne (Pa.), 218; 8 Coke, 192; 1 Cow., 734. 3. Our statutes in regard to sales under a foreclosure judgment, if proceedings are not stayed as therein provided, necessarily negative the idea that such a sale can be affected by a subsequent reversal of the judgment, whoever may become the purchaser. R. S., p. 827, sec. 19; Laws of 1860, p. 253, sec. 26. The fact that one of the plaintiffs became the purchaser as trustee for the mortgagees, does not alter the question. He was expressly au-

thorized by the judgment to become such purchaser, and should be placed upon the same footing as other bidders at the sale. 4. The respondents, having had notice of the application to confirm the sale, should have then interposed their objections. After confirmation and the expiration of the term, we submit that the purchaser's title is absolute, unless impeached for fraud, in accordance with the practice of the court. 5. Admitting that the railroad company, holding the equity of redemption, might have demanded that the sale should be set aside, the respondents, who had only a lien upon the equity of redemption as judgment creditors, were not entitled to have it set aside. The company may have considered the sale beneficial to them, and preferred that it should stand. The property may have sold for an amount much larger than it would now bring; and the action of the respondents may sink the company, against their will, still deeper in debt. The respondents should at least have been required to show that a larger amount would be realized on a resale. *McLagan v. Brown*, 11 Ill., 519 ; *Jackson v. Bartlett*, 8 Johns., 361.

*Strong & Fuller*, for respondents, contended that the order in question was not appealable, citing 16 Wend., 370; 18 id., 350 ; 23 N. Y., 160. 2. If the sale already made is to stand, what judgment can be rendered after the next trial? It can neither be for a sale nor for a strict foreclosure, because the title will already be out of the mortgagors. The premises were sold to the mortgagees for $210,000, for which amount the plaintiff's attorney gave his receipt. Now suppose the next judgment should be for $100,000; how is the remainmaining $110,000 to be got out of the hands of the mortgagees? 3. If the reversal did not have the effect to make the sale a nullity, there was so much the more necessity for setting it aside. This is a case which appeals forcibly to the equity of the court. The judgment was for nearly a million of dollars. It was a practical impossibility for the defendants in the foreclosure suit to give bail for the deficiency, and thus stay proceedings. Unless this order is sustained, then, the moment the mortgagees obtained their erroneous judgment, a valid sale of the premises became inevitable.

June Term,
1862.

JESUP
v.
CITY BANK OF
RACINE et al.

The mortgagees have sold a large amount of personal property, together with the real property, at one bid, the personal property not being present at the sale ; and they have sold, claiming that there was immediately due to them more than $800,000, when in all probability there was not more than one-eighth of that amount due to them. If their judgment had been originally correct, and in accordance with the decision of this court, perhaps the personal property, or the property covered by the mortgage in Illinois, or both together, would have sold for enough to have paid the amount due. The fact of the judgment having been for so large an amount payable immediately in money, would effectually prevent any other parties interested in the property from making any efforts or arrangements to prevent a sale, or to have the property sold at a fair price, if the sale was to take effect.

October 11.     *By the Court*, PAINE, J.   This is an appeal from an order setting aside a sale of a rail road on a mortgage foreclosure. It is objected that the order is not appealable.   But such orders have always been held appealable here, and if a change is desired it is for the legislature to make it.   See *Carney vs. The L. C. & M. R. R. Co.*, *ante*, p. 503.

The reason for setting aside the sale was, that the foreclosure judgment on which it was made was afterwards reversed in this court.   The general rule is conceded, that when a sale is allowed to take place upon a judgment, without any steps taken to stay procedings, the title of the purchaser will not be divested by a susequent reversal of the judgment for error.   There are authorities which make a distinction between cases where the purchase is by a stranger who advances his money, and those where it is by the plaintiff in the judgment.   This distinction was sustained by this court in the case of *Corwith vs. The State Bank of Illinois*, *ante*, p. 289, where we held that the reversal of the judgment, which was a mere personal judgment, was a good reason for setting aside a sale where the plaintiff in the judgment was the purchaser.   But the reason of the rule is, that the reversal of the judgment destroys the right to have the property sold at

all, and if upon the merits, it shows that the plaintiff had no claim against the defendant. It such case it is no more than just that a plaintiff who has acquired title to another's land on the strength of such a judgment, should restore it. He has advanced nothing, and when his judgment falls, all pretense of right in him to hold the land seems to fail.

But the same reason does not exist in the case of a judgment of foreclosure where the reversal, as in this case, did not defeat the entire claim, but only reduced the amount. There a claim is still left. The mortgage itself creates a lien upon the land, and a liability to sale. If the sale in such a case is set aside, the only result is that it must be sold over again. Upon these grounds we think the principle adopted in the case of *Corwith vs. The State Bank*, should not be applied to a sale on a mortgage foreclosure, where the reversal does not defeat the entire mortgage debt, even though the mortgagee be the purchaser. In such a case it should be shown that there was some unfairness in the sale, or that the property would, on a resale, bring a larger amount than the bid at the first sale.

This being the only reason for setting aside the sale, the order is reversed, with costs.